UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WILLIAM JACKSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:11-CV-09 ) |
| OFFICER JEREMY WEBB, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court[1] on the motions *in limine* filed by the Defendant, Officer Jeremy Webb (Docket # 33), and the Plaintiff, William Jackson (Docket # 35). For the reasons provided below, the Defendant's motion *in limine* will be GRANTED, and the Plaintiff's motion *in limine* will be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff William Jackson is suing the Defendant, Fort Wayne Police Department (FWPD) Officer Jeremy Webb, under 42 U.S.C. § 1983. Jackson's claim arises out of the events that occurred on December 30, 2009, when Webb arrested Jackson for driving while intoxicated and transported him to St. Joseph Hospital. Jackson contends that, once they arrived at the hospital, Webb used excessive force, in violation of Jackson's Fourth Amendment rights, when he grabbed Jackson's neck, choked him, knocked him to the ground, and kneed him in the chest. Webb denies these allegations and maintains that any force he used was reasonable.

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 13.)

1

## II.  NATURE OF AN ORDER *IN LIMINE*

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question."  *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part) (citation omitted).  "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials."  *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change."  *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").  In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer."  *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect," *id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## III.  WEBB'S MOTION *IN LIMINE*

Jackson raises no objection to Webb's motion *in limine* (*see* Docket # 40), which seeks to preclude references or allusions to citizen complaints, other criminal or civil actions, or discipline against Webb or information contained in his personnel files with the FWPD; settlement

2

negotiations; or whether the City of Fort Wayne will indemnify him. As such, the Defendant's motion is GRANTED in its entirety.

## IV.  JACKSON'S MOTION *IN LIMINE*

### A. *Unopposed Portions of Jackson's Motion* in Limine *(Nos. 4, 8-11)*

Webb does not object to Jackson's efforts to preclude references or allusions to FWPD protocol or standard operating procedures; attorney's fees; settlement negotiations; tax considerations; or "send a message" arguments in opening or closing statements. As such, the Plaintiff's motion is GRANTED as to these matters.

### B. *Narrative Reports (No. 1)*

Jackson seeks to exclude any narrative reports by Webb or any other officers who may testify, arguing that they are biased, prejudicial, and constitute inadmissible hearsay. (Pl.'s Mot. in Limine 1-2.) Webb counters that his narrative report is admissible under Federal Rule of Evidence 803(8) as a public record and report and that Jackson's statements contained in his report may fall under Rule 803(2), the excited utterance exception to the hearsay rule. (Def.'s Resp. to Pl.'s Mot. in Limine ("Def.'s Resp.") 1-2.) Webb further argues that his narrative report may be used to refresh his recollection under Rule 803(5) if the Rule's foundational requirements are met. (Def.'s Resp. 2.)

At this juncture, Jackson's motion *in limine* is GRANTED with respect to this evidence. Presumably, any narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover,

until Webb has laid a proper foundation, he may not use the document to refresh his recollection or read the document into evidence under Rule 803(5).

### C. The Criminal Charges Brought Against Jackson (No. 2)

Next, Jackson seeks to preclude evidence about whether criminal charges were brought against him as a result of his arrest on December 30, 2009, on the basis that, because this is an excessive force case, the jury does not need to hear that Webb arrested or charged Jackson with particular criminal offenses. (Pl.'s Mot. in Limine 2.) Webb contends that Jackson's charges and convictions for operating a vehicle after a lifetime suspension and while intoxicated arising out of his arrest are relevant, particularly this latter charge and conviction for driving while intoxicated as it directly pertains to Jackson's ability to observe, perceive, recall, and recount the events of December 30, 2009, as well as his state of mind. (Def.'s Resp. 2-3.) Webb further argues that if, at trial, Jackson denies drinking to the point of intoxication on December 30th, then he should be permitted to impeach Jackson with his charge and conviction for operating a vehicle while intoxicated. (Def.'s Resp. 3.) As to both charges, Webb maintains that the jury will be confused by a "chronological and conceptual void" if they do not hear that Jackson was charged with any offense arising out of his December 30th arrest. (Def.'s Resp. 3.)

The Court agrees with Jackson that neither the charges brought against him, nor their ultimate resolution, should be admitted. Jackson is not making a false arrest or malicious prosecution claim. The only issue in dispute is whether, in light of the facts and circumstances known to him at the time, Webb's use of force against Jackson was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007). Whether or not Jackson was later charged with a crime is irrelevant to whether the amount of force Webb used in arresting him was excessive. Furthermore, significant prejudice or

confusion could arise if the jury seeks to retroactively gauge the reasonableness of Webb's use of force against the knowledge that criminal charges were later lodged by the prosecuting attorney. *See* FED. R. EVID. 403.

Nonetheless, Webb will be permitted to testify about why he arrested Jackson, as that would be relevant to the reasonableness of the force used. FED. R. EVID. 402; *Payton v. Fike*, No. 1:09-cv-222, 2010 WL 4065601, at *3 (N.D. Ind. Oct. 15, 2010); *Larsen v. Barrientes*, No. 1:09-cv-55, 2010 WL 2772325, at *2 (N.D. Ind. July 12, 2010); *Starks-Harris v. Taylor*, No. 1:08-cv-176, 2009 WL 2970382, at *3 (N.D. Ind. Sept. 11, 2009). This includes that Jackson was arrested for driving while intoxicated, which speaks to Jackson's ability to observe, recall, and recount the events surrounding Webb's alleged use of excessive force. *See Casares v. Bernal*, 790 F. Supp. 2d 769, 785-86 (N.D. Ill. 2011) (stating "[w]here there is reason to believe that alcohol . . . impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his . . . alcohol use is admissible").

And as to Webb's argument that he should be permitted to impeach Jackson with his charge and conviction for driving while intoxicated if, at trial, Jackson denies he was intoxicated, at this point, without knowing with certainty what Jackson will testify to at trial, Jackson's motion is GRANTED with respect to evidence of his charges and convictions for operating a vehicle while intoxicated and after a lifetime suspension. If Jackson, however, denies being intoxicated or otherwise implies that he was not intoxicated at the time of his arrest, he will have opened the door to such evidence in regard to the driving while intoxicated charge and conviction. Consequently, Webb may then seek to be relieved of this part of the Order at trial.

### D. Jackson's Criminal Record (No. 3)

Jackson also attempts to preclude evidence regarding his criminal record, particularly his prior convictions and the Police Main Names Table that Webb expects to offer as Exhibit 2. (Pl.'s Mot. in Limine 2.) Jackson argues that this table lists information relating to his prior arrests, regardless of the type or level of offense charged, whether any conviction resulted, and when the offense occurred. (Pl.'s Mot. in Limine 2-3.) In response, Webb contends that Jackson's 2010 conviction for operating a vehicle after a lifetime suspension, 2007 conviction for operating a vehicle after a lifetime suspension, 2006 conviction for being a habitual traffic offender, and 2004 conviction for possession of cocaine or narcotics are admissible for impeachment purposes under Federal Rule of Evidence 609(a). (Def.'s Resp. 4-5.) Webb further maintains that Jackson's 2010 conviction for operating a vehicle while intoxicated, which arose out of his December 30, 2009, arrest, is admissible for impeachment purposes at it shows his state of mind and that he was intoxicated at the time of his arrest. (Def.'s Resp. 5.) Finally, Webb argues that Jackson's 1996 conviction for possession of cocaine or narcotics, even though it is more than ten years old, is admissible under Federal Rule of Evidence 609(b). (Def.'s Resp. 6.)

First, regarding any prior arrests that did not lead to a conviction, they are usually inadmissible under Rule 403's balancing test and Rule 404(b)'s bar against character evidence. *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill. 2011). In his response, Webb does not otherwise argue that they should be admissible. As such, Jackson's motion is GRANTED with respect to any prior arrests that did not lead to conviction. Several of Jackson's prior convictions, however, will be admissible.

Rule 609(a) governs the admissibility of Jackson's felony convictions and provides that evidence of a witness's criminal conviction is admissible, subject to Rule 403, "if the crime was

punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . ." FED. R. EVID. 609(a)(1). Convictions are not admissible "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." FED. R. EVID. 609(b). The Seventh Circuit has "defined both the starting and ending points for the calculation of Rule 609(b)'s ten-year time limit. The clock starts at the witness's release from any physical confinement, or in the absence of confinement, the date of the conviction." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) (citation omitted). "[T]he end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying." *Id.* (citation omitted).

According to Webb's recount of Jackson's criminal history (*see* Def.'s Resp. 4-6), Jackson was convicted in 1996 of felony possession of cocaine or narcotics. This conviction falls outside the ten years preceding the August 7, 2012, trial date, and, although he attempted to, Webb has not shown that the probative value of this 16-year-old conviction substantially outweighs its prejudicial effect. As such, this 1996 conviction is excluded under Rule 609(b).

On the other hand, Jackson's four other felony convictions—convictions in 2010 and 2007 for operating a vehicle after a lifetime suspension, a 2006 conviction for being a habitual traffic offender, and a 2004 conviction for possession of cocaine or narcotics—clearly fall within the ten year period before the trial date of August 7, 2012, and therefore are admissible under Rule

609(b), subject to an appropriate limiting instruction.[2]

As to Webb's contention that Jackson's 2010 misdemeanor conviction for driving while intoxicated arising from the disputed arrest should be admitted for impeachment purposes as it shows his state of mind and intoxication (Def.'s Resp. 5), this argument was already rejected above. While Webb can testify as to why he arrested Jackson, Jackson's driving while intoxicated conviction is not admissible at this juncture.

Accordingly, Jackson's motion is GRANTED with respect to his 1996 conviction for possession of cocaine or narcotics and his 2010 conviction for operating a vehicle while intoxicated. The motion is DENIED as to his remaining four felony convictions, which are admissible only upon an appropriate limiting instruction and for the sole purpose of impeachment.

*E. Any Witness Not on the Scene at the Time of the Alleged Excessive Force (No. 5)*

Jackson next seeks to prevent Webb from calling as a witness anyone who was not present when Webb allegedly used excessive force against him as their testimony would be irrelevant to Webb's liability. (Pl.'s Mot. in Limine 3-4.) Jackson further argues that unnamed St. Joseph Hospital security staff should be excluded as neither their identities nor their anticipated testimony was disclosed to him. (Pl.'s Mot. in Limine 4.) Webb responds that some of the anticipated witnesses are needed to lay foundation for exhibits and that others observed Jackson directly before or after the alleged incident and that, as such, they should be permitted to testify about their observations as to Jackson's level of intoxication, belligerent conduct, and state of

---

[2] Jackson makes no argument as to why the probative value of these convictions for purposes of impeachment is outweighed by any prejudicial effect, *see* FED. R. EVID. 609(a), 403, and the Court can see none. After all, Jackson's credibility is central to the case. *See United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997). However, to minimize the risk of undue prejudice, Webb is limited to submitting into evidence solely the date, charge, and disposition of the convictions. *See, e.g., Charles v. Cotter*, 867 F. Supp. 648, 656 (N.D. Ill. 1994) (concluding that the witness's felony convictions were probative evidence of his credibility and that any prejudicial effect was reduced by limiting the cross-examination "to the crime charged, the date, and the disposition (i.e., guilty or not guilty—not length of sentence) with respect to felony convictions during the past ten years").

mind; whether they saw an injury to Jackson; or whether he reported an injury or his claim against Webb. (Def.'s Resp. 6-7.)

First, as to Jackson's contention that the unnamed hospital security staff should be excluded from testifying as Webb never disclosed their identities or anticipated testimony, according to the Defendant's Trial Brief, it does not appear that Webb intends to calls these witnesses (*see* Docket # 36 at 3-4), thereby mooting Jackson's objections.

On the other hand, Jackson's effort to exclude any witnesses not present during the alleged excessive force incident is extremely—and fatally—broad. As Webb argues, witnesses who observed Jackson immediately before or after the alleged use of excessive force would presumably be able to testify as to Jackson's behavior, demeanor, and appearance before and after the incident, which would be relevant to the excessive force inquiry as well as Jackson's allegations of physical injury and emotional distress. *See Sughayyer v. City of Chicago*, No. 09 C 4350, 2012 WL 2359065, at *3 (N.D. Ill. June 20, 2012) (noting that in an excessive force claim several witnesses testified about the plaintiff's damages, including one who testified generally about the physical and emotional differences he noticed in the plaintiff after the disputed events); *More v. City of Braidwood*, No. 08 C 5203, 2010 WL 3547964, at *3 (N.D. Ill. Sept. 7, 2010) ("The plaintiff's behavior . . . is relevant to the officers' state of mind and the excessive force inquiry."). Accordingly, Jackson's broad request to exclude any witnesses who were not present at the time of the alleged use of excessive force is DENIED.

  *F. Any Video and Audio Recording Prior to the Alleged Excessive Force (No. 6)*

Jackson also asks the Court to preclude Webb from offering into evidence the in-car video recording from Webb's initial vehicle stop of Jackson on December 30th as neither the video nor audio capture anything that occurred during the alleged excessive force incident and because the

recording would be unduly inflammatory due to Jackson's comments on the video.[3] (Pl.'s Mot. in Limine 4-6.) In contrast, Webb maintains that the recording is admissible as it depicts the "totality of the circumstances," including Jackson's belligerent conduct and verbal resistance, facing Webb approximately fifteen minutes before his alleged use of excessive force against Jackson. (Def.'s Resp. 7-9.)

In an excessive force case, the circumstances that matter in a jury's determination of whether an officer's actions were objectively reasonable are "only those circumstances known and information available to the officer at the time of his action." *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (en banc). This requires a jury to "stand in the shoes of the officer and judge the reasonableness of his actions based on the information he possessed in responding to that situation." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (citing *Sherrod*, 856 F.2d at 804-05).

According to Webb, the in-car recording depicts Jackson's belligerent conduct, verbal resistance, and refusal to cooperate that occurred approximately fifteen minutes before the alleged excessive force incident. Jackson's behavior at this time, which includes whether he was under the influence of alcohol, is relevant to Webb's state of mind and the excessive force inquiry. *More*, 2010 WL 3547964, at *3. Moreover, a video recording of the events preceding the alleged excessive force incident show the circumstances facing Webb and the knowledge and information he had when dealing with Jackson fifteen minutes later at the hospital; as such, the recording is relevant to whether Webb's later actions were reasonable. *See Sherrod*, 856 F.3d at 804l.

Moreover, the probative value of this evidence to the alleged excessive force incident is

---

[3] Although the Court has not viewed the recording, Jackson represents that the video captures his comments such as "I don't follow the laws of the United States" and his repeated statement that he was not going to be a "slave." (Pl.'s Mot. in Limine 5.)

10

not substantially outweighed by the danger of unfair prejudice to Jackson. *See* FED. R. EVID. 403. Although Jackson argues that his statements captured on the video regarding not following the laws of the United States and not being a slave would prejudice the jury against him as most, if not all, of the jurors will be non-black, mainly middle class individuals and he is African-American, such speculation—particularly when no voir dire, let alone jury selection, has been conducted yet—does not outweigh the probative value of the recording. As such, Jackson's motion is DENIED with respect to this evidence.

### G. Any Evidence of Plaintiff's Treatment at Parkview Hospital (No. 7)

Jackson next asserts that the Parkview Hospital records addressing his chemical dependency treatment in 2000 and various injuries and an illness from the 1990s that Webb intends to submit at trial are irrelevant, highly inflammatory, and prejudicial and would only confuse a jury and waste time; as such, he asks the Court to exclude these records. (Pl.'s Mot. in Limine 6-7.) According to Webb, because Jackson claims mental and emotional distress from this incident, he has opened the door to the admission of his mental health counseling records and drug and alcohol issues as evidence of alternative causes for his emotional distress. (Def.'s Resp. 9-10.)

First, as Webb does not appear to challenge Jackson's attempt to exclude the Parkview Hospital medical records addressing various injuries and an illness from the 1990s, Jackson's motion with respect to this evidence is GRANTED.

At this point in time, Jackson's motion is also GRANTED with respect to the mental health records. Medical records evincing other possible causes for Jackson's claimed mental distress will be excluded until Webb establishes a foundation for their admissibility. *See Schober v. SMC Pneumatics, Inc.*, No. IP 99-1285-C T/G, 2000 WL 1911684, at *2 (S.D. Ind. Dec. 4,

2000) (discussing procedure to admit and authenticate medical records); FED. R. EVID. 803(6). Nevertheless, counsel are instructed to attempt to redact confidential and irrelevant information in the additional medical records in the event they may ultimately be admitted.

*H. Audio Recordings of Dispatch Transmissions (No. 12)*

Lastly, Jackson attempts to prevent Webb from introducing 18 FWPD radio dispatch transmissions from December 30, 2009, on the grounds that the statements contained within are hearsay and irrelevant and that at least one such statement—that "this guy might resist"—is also highly prejudicial. (Pl.'s Mot. in Limine 8.) Webb counters that the radio transmissions fall under the present sense impression or business records exceptions to the hearsay rule or constitute a non-hearsay prior consistent statement under Rule 801(d)(1)(B). (Def.'s Resp. 10-11.)

The Court has reviewed the 18 radio dispatch transmissions, and they appear to be mostly irrelevant. As such, until the probative value of these transmissions is established, Jackson's motion to exclude them is GRANTED.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion *in limine* (Docket # 33) is GRANTED, and Plaintiff's motion *in limine* (Docket # 35) is GRANTED IN PART and DENIED IN PART as set forth herein. It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution

each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 3rd day of August, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
